## Swope *versus* The Jefferson Fire Insurance Co.

| 93 | 251 |
| 99 | 122 |

1. Where one alleges that a contract should be avoided on the ground that it was made to compound a felony, it must be shown that there was an agreement not to prosecute, and it must appear by a preponderance of evidence that a crime was actually committed.

2. Threats of prosecution, unless a certain security was given, will not justify an inference that if the security was given the agreement was that no prosecution would follow.

February 23d 1880.　Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.　GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1880, No. 136.

Scire facias by the Jefferson Fire Insurance Company, assignee of Philip Coleman, against Enoch Swope, on a mortgage given by defendant to Coleman.

The defendant pleaded payment, with leave, &c., with notice of special matter.

At the trial the plaintiff offered in evidence the mortgage, proved its execution and assignment, and rested.

The defendant then offered to prove by his own testimony, "that the defendant's son, Albert, was in the employ of Mr. Philip E. Coleman, who was secretary of the company plaintiff; that in such employment he assisted him as such secretary; that on or about the 1st October 1876, Coleman sent for the witness, and said to him, 'Your son has been stealing from the company, and I want you to pay it back;' that witness asked what amount, to which response was made, 'Between $700 and $800;' that witness told said Coleman that he could not pay it, as he had no money and no means of getting any; that Coleman then said, 'You have your house, mortgage that;' to which witness responded, 'That is all I have in the world, and I am getting old; I can't do that;' that Coleman rejoined, 'Well, if that is not done, I'll arrest Albert, and he'll go to the penitentiary, sure;' that the witness declined to give the mortgage, and left; that about a week thereafter, Coleman again sent for witness, who did not respond, but sent his son Edwin; that from what Edwin reported to him on his return, and the contents of another letter immediately thereafter received from Coleman, the witness again called on Coleman, who then said, producing a paper, 'This amount is now $1300 that Albert has stolen, and I want to see if you are going to fix it up;' that witness replied, 'I am unable; I have no money, and can't raise any;' that Coleman said, 'Mortgage your property, and I'll have it taken by the company, and if you do not we will have Albert arrested for his stealing, and put him in the penitentiary;' that witness became much alarmed and mentally depressed, and under this condition the paper was signed; that it

[Swope *v.* Jefferson Fire Ins. Co.]

was never acknowledged by the witness; that he never received a cent from Coleman or the company in consideration of the mortgage; that throughout the transaction the said Coleman acted for the company plaintiff, and not for himself; that the purported certificate of no set-off was not given until November 1878, and witness did not know the purport thereof; and that the compounding of the said felony committed by his son was the only consideration of said mortgage." The court overruled the offer.

Also, to prove by his son Edwin, that at the request of defendant, his father, he called upon Coleman in response to a letter from Coleman to his father; that Coleman said he wanted to see his father; "that this stealing of Albert's had to be made up to the company, and if he (defendant) did not come down immediately, and give the mortgage they had spoken of, the company would at once arrest Albert, and put him in the penitentiary." Offer overruled.

The court directed the jury to find for the plaintiff. There was a verdict and judgment in accordance with this direction, when the defendant took this writ, alleging that the court erred in rejecting his evidence and in directing a verdict for plaintiff.

*W. F. Johnson*, for plaintiff in error.—The contract was void, as it was against public policy and impeded the course of public justice. It was founded on an illegal consideration: Edgcombe *v.* Rodd, 5 East 294; Filson *v.* Himes, 5 Barr 452. The offence committed by Albert Swope is made a felony by the 107th section of the Act of Assembly of 31st March 1860, Pamph. L. 409; and by sect. 10 of the same act, Pamph. L. 385, the taking of money to compound or conceal the same is in itself a misdemeanor punishable by fine and imprisonment. An action will not lie upon a contract made in violation of a statute: Eberman *v.* Retzel, 1 W. & S. 181; Wheeler *v.* Russell, 17 Mass. 280; Prole *v.* Wiggans, 3 Scott 607; Hinesburg *v.* Sumner, 9 Vt. 23; Hipple *v.* Rice, 4 Casey 406; Seidenbender *v.* Charles, 4 S. & R. 151.

*William D. Wetherill* and *John F. Belsterling*, for defendant in error.—To avoid a contract or mortgage, on the ground that it was given to stifle a prosecution, the defendant must prove that a crime was actually committed: Steuben County Bank *v.* Mathewson, 5 Hill 249; Catlin *v.* Henton, 9 Wis. 476. A mere threat of a criminal prosecution is not sufficient. The evidence must establish that there was an agreement not to prosecute, and that such agreement was the consideration for the mortgage: Fulton *v.* Hood, 10 Casey 365; Jones on Mortgages, vol. 1, p. 626; Plank *v.* Gunn, 2 Wood's U. S. C. C. 372 (1874); Catlin *v.* Henton, *supra;* Ward *v.* Allen, 2 Metc. 53; Report on the Penal Code, 13. If the plaintiffs had a lawful claim civilly against the defendant's son, the mortgage must be taken to have been given for that:

[Swope v. Jefferson Fire Ins. Co.]

Wallace v. Hardacre, 1 Camp. 46; Harding v. Cooper, 1 Stark. 467.

Mr. Justice STERRETT delivered the opinion of the court, May 3d 1880.

The negotiations which resulted in obtaining from the plaintiff in error the mortgage in suit were conducted, on behalf of the insurance company, by Philip E. Coleman, its secretary. Although the mortgage was given in his name, and by him assigned to the company, it was not taken for himself, but for the benefit of the company which he represented in the transaction. It follows, therefore, that the company, in seeking to enforce a contract obtained through the agency of its executive officer for its own benefit, is bound by his acts affecting the validity of the contract.

It cannot be doubted that a mortgage executed in consideration of an agreement to compound a felony is void, and will not be enforced. Such was the nature of the defence sought to be interposed in this case; and the only question is whether the offers of testimony excluded by the court tended to prove that Albert Swope, the son of the plaintiff in error, fraudulently embezzled money of his employer, the insurance company, and thus committed the felony, punishable by sect. 107 of the Crimes' Act, Purd. Dig. 345, pl. 152, and that the mortgage was executed and delivered in consideration of an agreement that he should not be prosecuted for the felony. If the testimony tended to prove these facts, it should have been received and submitted to the jury with instructions to find for the defendant if the facts were satisfactorily established.

The proposition covered by the first assignment was to prove in substance that the son had been accused of stealing from the company, and a demand that the father should execute the mortgage to secure the sum stolen, coupled with the threat that if it was not done, Albert would be arrested and sent to the penitentiary; that the plaintiff in error, having at first declined to accede to the demand, was again urged by Coleman, who exhibited a paper containing a statement of the sums alleged to have been embezzled, and said: "This is now $1300 that Albert has stolen, and I want to see if you are going to fix it up." To which the father replied: "I am unable; I have no money and cannot raise any." Whereupon Coleman said: "Mortgage your property, and I'll have it taken by the company, and if you do not we will have Albert arrested for his stealing and put him in the penitentiary." The offer covered by the second assignment was to prove that Coleman said, on another occasion, "that this stealing of Albert's had to be made up to the company, and if he (defendant below) did not come down immediately and give the mortgage spoken of, the company would at once arrest Albert and put him in the penitentiary."

[Swope *v.* Jefferson Fire Ins. Co.]

This is the substance of the offers overruled by the court. While the substantial proposition embodied in them was to prove that defendant's son was accused of embezzlement, and that criminal prosecution therefor was threatened unless restitution was made or the money alleged to have been embezzled secured to the company, there was no offer to prove that the felony had actually been committed, or that there was an agreement not to prosecute if the security demanded was given. The guilt of the party accused and an agreement not to prosecute are essential ingredients in the compounding of a felony. Though the proof of guilt need not be of that conclusive character that would be necessary to convict, there should be at least such preponderance of evidence as will justify the jury in finding that a felony was committed. If all the allegations of fact embodied in the offers had been proved, they were not sufficient to justify the jury in finding that Albert was guilty of the crime laid to his charge. There was no offer to prove an admission of guilt on his part, or any fact from which the jury could reasonably infer guilt. At best it would be merely a matter of conjecture. If this were permitted, mortgages and other real estate securities would rest on a very frail foundation. Nor was there any offer to prove an agreement not to prosecute. The offers were to prove threats of prosecution if the security was not given, and it is claimed that the jury might have inferred from this that if the mortgage was given the agreement was that no prosecution would ensue. But this would be unwarranted. In National Bank of Oxford *v.* Kirk, 9 Norris 49, the defendant offered testimony tending to show that he was induced to give the note in consequence of the threatened prosecution of his son for forgery, coupled with the representation of one of the officers of the bank, that if the note was given it would probably be paid by the son, and "no one would then know anything about" the forgery. This tended to show an agreement on the part of the bank not to prosecute, and the question was accordingly submitted to the jury. In the present case the testimony was insufficient to sustain the defence that was relied on, and there was therefore no error in overruling the offers.

Judgment affirmed.